Stephen C. DAVENPORT *v.* BRUNO-PYATT
PUBLIC SCHOOLS

CA 83-327                                            667 S.W.2d 668

Court of Appeals of Arkansas
En Banc
Opinion delivered April 18, 1984

*Cearley, Mitchell & Roachell,* by: *Richard W. Roachell,*
*for appellant.*

*G. Ross Smith, P.A.,* for appellee.

GEORGE K. CRACRAFT, Judge. On July 15, 1982 the
Bruno-Pyatt School Board voted not to renew the contract of
Stephen C. Davenport, a non-probationary teacher, for the
year 1982-83. The basis for that determination was that he
had violated a known policy promulgated and adopted by
that board. On appeal to the circuit court the board's deci-
sion was affirmed on finding that the determination not to
renew appellant's contract was for legitimate reasons and

was not arbitrary, capricious or discriminatory. The court also affirmed the finding of the board that he had been discharged for failure to comply with the school district's written policies and directives regarding deadlines for return of renewal contracts.

On appeal the appellant does not contend that the school policy was unreasonable but admits that it was adopted for compelling reasons. He contends only that the board was equitably estopped to rely on that policy and acted arbitrarily and capriciously in failing to renew his contract. We find no merit to these contentions.

Ark. Stat. Ann. § 80-1264.9(b) (Repl. 1980) provided that any certified teacher who had been employed continuously by a school district for three or more years may be terminated or the board may refuse to renew the contract for any cause "which is not arbitrary, capricious or discriminatory." The courts have previously held that an action is arbitrary or capricious only if it is not supported on any reasonable basis. *Lamar School Dist. No. 39* v. *Kinder*, 278 Ark. 1, 642 S.W.2d 885 (1982). On May 18, 1982 the superintendent tendered renewal contracts to all teachers in the Bruno-Pyatt Public Schools to which were attached a memorandum stating that pursuant to school board policy all contracts must be signed and returned by June 3, 1982 or the positions would be considered unfilled.

Shortly before June 3rd the superintendent learned that all of the teachers' contracts except that of appellant had been returned signed. On June 1st appellant was reminded that his contract would be due no later than June 3rd. Appellant obtained permission to appear before the board to request an increase in salary, stating that he would turn in his contract at that time. He testified that the superintendent stated that there would be no objection to holding the contract until that date. The superintendent denied having made this statement. On June 7th Mr. Davenport attended the board meeting but did not return his contract because it was in his wife's car and he stated he would not be able to turn it in until the 9th. The superintendent reminded him at the meeting that his contract was already past due.

On June 15th the superintendent notified the appellant that he was recommending that his contract not be renewed for the coming year because he had not returned his contract within the specified time. After receiving that notice the appellant did execute and return his contract on June 21st and requested a hearing before the board on the recommendation not to renew. On July 15th a hearing was held at which the board accepted the superintendent's recommendation that appellant's contract not be renewed for the reasons given in the notice. At that hearing the appellant testified that he had obtained permission from the superintendent to hold his contract until the board meeting.

Appellant testified that after presenting his request for an increase in salary to the board it indicated that it would not make a decision on his request at that time but would communicate with him later. He testified that he then stated that if the board did not mind he would hold his contract until after the decision was reached. He stated that none of the board members responded but that one nodded affirmatively when his request was made. He testified that he had interpreted this affirmation and the silence of the other members to mean that his request was favorably received. Both the superintendent and principal who were present at that meeting testified that no member of the board gave an indication of approval by nodding or otherwise. Both of them interpreted the silence of the board to mean that appellant's failure to return the contract was presenting a problem for the board. One board member testified that her silence was intended to indicate disapproval of his request and that no member of the board gave indications of approval in any manner.

Appellant argues that because the school board had indicated that it would contact him later with regard to his raise he had every right to expect that the rule of the superintendent was to be waived until such time as the board had considered and reviewed his salary for the coming year. The record discloses, however, that before the June 7th meeting began he was reminded at least once that his contract was already past due. Rational minds could conclude that he was withholding this contract for other

reasons. He also argues that the silence of the board in his request to hold his contract until after the decision of the board was made lulled him into a sense of security to his detriment. He argues that equitable estoppel would arise where there was an opportunity and duty on the part of the board to speak when they knew that he would rely upon their silence to his injury. Rational minds could conclude that the inference to be drawn from the board's silence was not its approval of appellant's conduct but rather its disapproval, as the superintendent, principal, and a board member testified. Based on these facts we can find no error in the trial court's finding that the action of the board was not arbitrary or capricious.

Appellant next argues that he substantially complied with the board's rule and his delay in returning his contract had not substantially prejudiced any right of the school board and that therefore their action was arbitrary and capricious. He contends as he had not indicated that he would not sign the contract or that he intended to resign if his raise was not granted, and the superintendent testified that at the time of the hearing he had not contacted or employed a teacher to take his place, no prejudice could have resulted from his delay. The appellant himself admits that staffing for the coming year in an orderly and efficient manner is an important if not compelling reason for such a rule. The superintendent testified at the renewal hearing that the reason for the rule was that the school administrator could not obtain a staff for the next year without knowing what existing staff members plan to return and that a reasonable time is needed to search for the best person to fill existing vacancies. The appellant, after having been notified that his contract was due by June 3rd at the latest, did not turn his in until June 21st. We can find no error in the trial court's finding that appellant failed to comply with the deadline and therefore the nonrenewal was not arbitrary or capricious but was based on legitimate reasons.

We find no error and affirm.

COOPER and CLONINGER, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. I disagree with the majority opinion which holds that the trial court determined correctly that the Board's actions were not arbitrary or capricious.

The first reason given to support the Board's action is that the appellant violated a board policy by failing to return his contract within the time limits established by the Board. The appellant's renewal contract shows on its face that it was issued April 5, 1982. The superintendent distributed the contracts on May 18, and he requested that they be returned by June 3, 1982. The written policy concerning return of renewal contracts states:

> . . . All offers to renew annual contracts shall expire if not accepted in writing to the school administration office within ten (10) days of the date issued.

The Board and the superintendent did not distribute the contracts until six weeks after their issuance, and the superintendent did not abide by the written policy when he gave the teachers more than ten days to return the contracts. It appears that other teachers who complied with the superintendent's directive also violated the Board policy, but apparently were not penalized. I believe that this lack of uniformity in applying the policy shows that the Board acted arbitrarily.

The appellant clearly intended to return to his position, but delayed in returning his contract because, as a twelve-month teacher, he wished to exercise his right to negotiate over his salary. Under the conditions imposed by the superintendent, he had no real opportunity to negotiate. There was no Board meeting during the time the contracts were out, and, therefore, to comply with the superintendent's directive he would have been required to sign a contract which was silent as to salary and then, after signing, attempt to negotiate with the Board. It is worth noting that, although the Board agreed to consider his request for a raise, no action was ever taken on his request, but he was non-renewed.

There was no real staffing uncertainty, because the appellant had assured both the superintendent and the Board that he intended to return regardless of the Board's action on his request for a raise.

I think that the Board's action was clearly arbitrary and capricious because the appellant was forced to either violate the superintendent's directive or to effectively give up his right to any meaninfgul negotiation over salary.

I would reverse and remand with directions that the appellant be reinstated.

CLONINGER, J., joins in this dissent.